# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION

## CIVIL CASE NO. 1:09cv365
## [Criminal Case No. 1:07cr117]

| | |
|---|---|
| ROBERT KEITH ROSS, )<br>)<br>Petitioner, )<br>)<br>vs. )<br>)<br>)<br>UNITED STATES OF AMERICA, )<br>)<br>Respondent. )<br>_____) | MEMORANDUM OF DECISION<br>AND ORDER |

**THIS MATTER** comes before the Court on the Petitioner's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody [Doc. 1]. No response is necessary from the Government.

## PROCEDURAL HISTORY

On December 4, 2007, the Petitioner was charged in a two count bill of indictment with manufacturing and possessing with intent to distribute at least 500 grams of methamphetamine mixture and felony possession of a firearm, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. §922(g)(1). United States v. Ross, Criminal Case No.1:07cr117, at Doc. 1. The indictment contained a

1

notice that the offense involved the manufacture of methamphetamine and created a substantial risk of harm to human life and the environment. [Id.]. On February 11, 2008, the Petitioner entered into a plea agreement with the Government pursuant to which he agreed to plead guilty to Count One, the drug charge. [Id., at Doc. 8]. In the agreement, it was noted that the Petitioner faced a mandatory minimum sentence of 10 years and a maximum possible sentence of life imprisonment.[1] [Id.].

In the plea agreement, the parties jointly recommended to the Court that the amount of methamphetamine mixture known or reasonably foreseeable to the Petitioner was at least 50 but less than 200 grams. [Id.]. It was also jointly recommended that pursuant to the United States Sentencing Guidelines, §2D1.1(b)(1), a two-level firearm enhancement should be applied to his offense level. [Id.]. In the agreement, the Petitioner waived his right to contest his conviction and sentence on direct appeal or pursuant to 28 U.S.C. §2255 on any grounds other than ineffective assistance of counsel and prosecutorial misconduct. [Id.].

---

[1]This range of possible punishment was based on the charges as set out in the indictment. Because of the Court's adoption of the joint recommendation of the parties, however, the statutory range was reduced to a sentence of not less than five or more than forty years imprisonment. 21 U.S.C. §841(b)(1)(B). It was for this reason that the Court was able to sentence the Petitioner to 110 months, which is less than the 120 month statutory mandatory minimum for the charge as originally asserted in the indictment.

On February 19, 2008, the Petitioner appeared before the Court pursuant to Federal Rule of Criminal Procedure 11 at which time the Court placed him under oath and engaged him in a lengthy colloquy to insure that his guilty plea was knowingly, intelligently and voluntarily entered. [Id., at Doc. 9]. After considering the Petitioner's sworn statements, the Court concluded that his plea was knowing, intelligent and voluntary and it was accepted. [Id.]

The United States Probation Office filed the Petitioner's presentence report on May 22, 2008 (PSR). [Id., at Doc. 10]. In the report, it was noted that the laboratory analysis of the controlled substance found during a valid search of the Petitioner's home showed that 1,753.3 grams of methamphetamine mixture had been found. [Id.]. Had the Court found in accord with those facts, the Petitioner would have faced life imprisonment. [Id.]. It was also noted in the presentence report that the Petitioner had a methamphetamine laboratory in the basement of his home where he lived with his wife and minor son. [Id.]. The Petitioner's wife told the probation officer that the Petitioner forced his minor son to assist in making methamphetamine. [Id.].

In the presentence report the probation officer recommended enhancing the Petitioner's offense level pursuant to U.S.S.G. §2D1.1(b)(1) by

two points due to the presence of the firearm in the home [Id.], which was consistent with the parties' joint recommendation in the plea agreement. [Id. at Doc. 8]. Because the presence of the methamphetamine laboratory in the residence created a substantial risk of harm to the minor son, the officer also recommended enhancing the offense level an additional six points pursuant to §2D1.1(b)(10)(D)(i) & (ii). [Id. Doc. 10]. Because the Petitioner had forced a minor to assist, the offense level was enhanced in the presentence report an additional two levels pursuant to §3B1.4. [Id.]. Finally, the Petitioner's role as the leader and organizer of a criminal activity involving five or more participants caused his offense level to be increased in the PSR by four additional points pursuant to §3B1.1(a). [Id.]. The Petitioner's final offense level as reflected in the report was 37 and his criminal history category was IV, resulting in a guideline range of 292 to 365 months imprisonment. [Id.].

The Petitioner's trial counsel filed objections to the presentence report in June 2008. [Id., at Doc. 11]. Counsel argued that the liquid found during the search was methamphetamine precursor, not completed methamphetamine. [Id.] Counsel also objected to the recommendation that the Petitioner's offense level should be enhanced for his role as a leader and for having used and exposed his son to harm. [Id.] Counsel argued that the

4

final offense level should be 25, resulting in guideline range of 84 to 105 months imprisonment. [Id.] In addition to filing objections to the PSR, trial counsel also filed a sealed sentencing memorandum arguing for a downward departure from the sentencing range. [Id., at Doc. 16].

The Petitioner's sentencing hearing was held on September 30, 2008. The parties announced at the beginning of the hearing that they had reached an agreement concerning the Petitioner's objections. [Id., at Doc. 27, p.3]. The Government agreed to recommend the exclusion of the enhancements based on the Petitioner's role in the offense, endangering a minor and using a minor in the manufacture of methamphetamine [Id.], and the parties agreed to a three-level enhancement under §2D1.1(b)(10)(C)(ii) for the substantial risk of harm that the Petitioner's conduct posed to the environment. [Id.] The sentencing Court[2] found in accord with these adjustments and in accord with the joint recommendation of the parties that the drug quantities attributable to the Petitioner were greater than 50 but less than 200 grams of methamphetamine mixture. Based thereon the Petitioner's final total offense level was found to be 28, which resulted in a guidelines range of 110 to 137 months imprisonment. [Id., p.5].

---

[2]The sentencing judge has since retired and the case was reassigned to the undersigned.

The Court then sentenced the Petitioner to 110 months imprisonment. [Id., at Doc. 17]. The Petitioner did not file a direct appeal from his conviction or sentence, and therefore his conviction became final on October 16, 2008. United States v. Johnson, 203 F.3d 823 (4th Cir. 2000), *citing* Kapral v. United States, 166 F.3d 565, 577 (3rd Cir. 1999); *accord*, United States v. Walker, 194 F.3d 1307 (4th Cir. 1999), *citing* Adams v. United States, 173 F.3d 1339, 1342 n.2 (11th Cir. 1999).

On September 23, 2009, the Petitioner timely filed this motion pursuant to §2255 claiming that his trial counsel was ineffective because: (1) his sentencing range was enhanced based on the total weight of the methamphetamine mixture which included unusable, uningestible and unmarketable chemicals; and (2) counsel allowed his sentence to be enhanced as though he had been convicted pursuant to 21 U.S.C. §860a, which was not charged in the indictment, and pursuant to U.S.S.G. §2D1.1(b)(10)(C), which Petitioner asserts had not been adopted as of the time of his arrest. [Doc. 1-1, at 2-5].

## STANDARD OF REVIEW

A prisoner in custody under sentence of a [federal] court ... claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to

6

impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. §2255(a).

The Rules Governing Section 2255 Proceedings for the United States District Courts provide in pertinent part:

> The judge who receives the [§2255] motion must promptly examine it. If it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion[.]

Rule 4(b).

The Petitioner has alleged that his trial attorney was ineffective. The Supreme Court has stated the test for determining whether a defendant received adequate assistance of counsel.

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

Strickland v. Washington, 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

Unless a defendant makes both showings, his claim of ineffective

7

assistance of counsel must fail. Id. Thus, a defendant must show counsel's performance fell below objective standards of reasonableness, and, that but for his conduct, there was a reasonable probability the result of the prosecution would have been different. Id., at 688.

**DISCUSSION**

The Petitioner first claims that his counsel erroneously allowed him to be sentenced for an "unusable portion of a mixture, which makes the drugs found uningestible and unmarketable," in violation of Chapman v. United States, 500 U.S. 453, 111 S.Ct. 1919, 114 L.Ed.2d 52 (1991).[3] [Doc. 1-1, at 2]. It has been held, however, that "the Chapman ... test does not apply when determining whether a liquid is a mixture or substance containing methamphetamine under §841." United States v. Treft, 447 F.3d 421, 425 (5th Cir. 2006), *certiorari denied* 549 U.S. 1021, 127 S.Ct. 555, 166 L.Ed.2d 413 (2006); see also, United States v. Palacios-Molina, 7 F.3d 49, 53 (5th Cir. 1993) (Chapman does not apply to methamphetamine which has been singled out for different treatment under the guidelines); United States v. Rusher, 966 F.2d 868, 880 (4th Cir. 1992), *certiorari denied* 506 U.S. 926, 113 S.Ct. 351, 121 L.Ed.2d 266 (1992) (citing the guideline favorably); United States v.

---

[3] The Petitioner concedes that the substance included actual methamphetamine. [Doc. 1-1, at 3].

Korakis, 325 F.Supp.2d 628, 631 (E.D.Va. 2004).

Moreover, the question of whether the mixture found was, in fact, a methamphetamine mixture was fully aired in the Petitioner's criminal proceeding with Petitioner's clear knowledge and participation. Defense counsel filed objections to the portion of the presentence report regarding the substance by stating, "The 1,753.3 grams found was a mixture of methamphetamine precursor, including Sudafed and brake fluid. This mixture was not completed methamphetamine." [Criminal Case No. 1:07cr117, at Doc. 11]. He renewed this objection in the sentencing memorandum submitted to the Court. [Id., at Doc. 16].

The probation officer responded as follows:

According to the State Bureau of Investigation Laboratory Report, inside a white plastic bucket discovered in the basement of Ross' residence was a 2 liter plastic bottle, 3/4 full of bi-layered white/yellowish liquid *determined to be methamphetamine*, weighing 1,753.3 grams. As such, the probation officer maintains his position the defendant is responsible for 1,753.3 grams of methamphetamine mixture, not precursor as alleged by defense counsel.

[Id., at Doc. 12, p.27] (emphasis provided).

As such the question of whether the mixture at issue was a methamphetamine mixture or some unigestable by-product was clearly before the Court. At the sentencing hearing the Court examined the Petitioner as to

9

whether he understood the contents of the presence report, which raised this issue. [Id. at Doc. 27 p.6]. Petitioner acknowledged that he understood. Petitioner's attorney presented the sentencing court with the parties' agreed recommendation as to the disposition of this and other objections to the PSR. [Id., at Doc. 27, p. 1-5]. The Court's adoption of the parties' agreement reduced the Petitioner's total offense level from 37 to 28. Part of that agreement pertained to the quantity of methamphetamine mixture attributed to the Petitioner, as set out in the plea agreement, and Petitioner did not dispute that the substance at issue was, in fact, a methamphetamine mixture. [Id.]. The sentencing court specifically inquired of the Petitioner whether he agreed with the parties' stipulation and he stated that he did. [Id.]. The sentencing court thus found the presence report to be accurate as to quantity and type of methamphetamine. [Id., at Doc. 18]. The Petitioner's statement in open court precludes his ability now to argue that counsel was ineffective. Blackledge v. Allison, 431 U.S. 63, 74, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977) ("Solemn declarations in open court carry a strong presumption of verity."); United States v. DeFusco, 949 F.2d 114, 119 (4th Cir. 1991), *certiorari denied* 503 U.S. 997, 112 S.Ct. 1703, 118 L.Ed.2d 412 (1992) (statements made by petitioners at the time of pleading amount to strong,

formidable evidence thereof); *accord*, Sargent v. Waters, 71 F.3d 158, 162 (4th Cir. 1995). Although counsel made the same argument to the sentencing court which is now raised by the Petitioner, the laboratory report clearly resolved the dispute. In light of that resolution Petitioner conceded the point at sentencing, with the Petitioner's personal agreement to the resulting joint recommendation. Counsel provided more than effective assistance by nonetheless reaching an agreement with the government which resulted in the reduction of Petitioner's offense level from 37 to 28, despite counsel's inability to further attack the drug type and quantity.

The Petitioner also argues that counsel allowed him unknowingly to take responsibility for the overall weight of the methamphetamine mixture which was found at his residence, rather than for the lesser weight of the actual methamphetamine. [Doc. 1-1 at 3]. This argument, however, is specifically addressed by the Guidelines. The Notes to U.S.S.G. §2D1.1 provide in pertinent part:

> The term[ ] ... "methamphetamine (actual)" refer[s] to the weight of the controlled substance, itself, contained in the mixture or substance. ... In the case of a mixture or substance containing ... methamphetamine, use the offense level determined by the entire weight of the mixture or substance, or the offense level determined by the weight of the ... methamphetamine (actual), *whichever is greater*.

U.S.S.G. §2D1.1 n.(B) (emphasis provided).

The base offense levels set out in the Guidelines for methamphetamine are based on either the weight of the actual methamphetamine or the weight of the mixture, with the same base offense level applying that a given weight of actual methamphetamine as would apply to ten times that weight of a methamphetamine mixture. U.S.S.G. §2D1.1. Petitioner, therefore, did not have the option of pleading to a quantity of actual methamphetamine as opposed to a quantity of the mixture. The offense level was calculated both ways, and the higher one was to be applied. There is no legitimate objection that counsel could have raised on this point.

Moreover, as noted, counsel had already negotiated with the government to reduce the quantity attributable to the Petitioner from 1,753.3 grams, which would have produced a life sentence, to at least 50 but less than 200 grams, which produced a sentence of between 5 and 40 years. The Petitioner did not receive ineffective assistance.[4]

The Petitioner's second argument is that counsel was ineffective for agreeing to the three-level enhancement of §2D1.1(b)(10)(C)(i) because (1)

---

[4]The Petitioner also complains that the sentencing court refused to order disclosure to him of the actual laboratory report, making it impossible for him to know the exact quantity of actual methamphetamine involved. This argument is moot in view of the plain language of the guideline.

12

that guideline was not in effect at the time of his arrest and (2) the corresponding statutory provision, 21 U.S.C. § 860a, was not charged in the indictment.

The bill of indictment in the Petitioner's case did not charge a violation of §860a; he did not plead guilty to any such violation; and his offense level was not calculated based on any such conviction. U.S.S.G. §2D1.1(b)(10)(C)(i) ("the defendant was convicted under 21 U.S.C. §860a of manufacturing ... methamphetamine on premises where a minor is present or resides"). The Petitioner's presentence report recommended that his offense level be enhanced 6 levels pursuant to §2D1.1(b)(10)(D) because the offense created a risk of harm to a minor. By virtue of the joint recommendation entered into on the morning of sentencing, the Petitioner's offense level was enhanced instead by §2D1.1(b)(10)(C)(ii) (as opposed to (C)(i)) because the offense involved a risk of harm to the environment. The indictment contained a notice that the offense involved the manufacture of methamphetamine and created a substantial risk of harm to the environment. Therefore, no error occurred.

The Petitioner also argues that §2D1.1(b)(10)(C) became effective after the date of the Petitioner's arrest and therefore could not be applied to him.

13

The Petitioner was indicted on December 4, 2007 and arrested on January 13, 2008. Criminal Case No. 1:07cr117, at Doc. 1. Amendment 705 to the Sentencing Guidelines, effective November 1, 2007, added U.S.S.G. §2D1.1(b)(10)(C)(ii) to provide for a three level increase in offense level if an offense involving the manufacture of methamphetamine created a risk of harm to the environment. U.S.S.G. §2D1.1(b)(10)(C)(ii) (2007). This section was, therefore, in effect at the time of Petitioner's indictment. Petitioner's argument to the contrary is factually erroneous. As such, counsel's failure to present this argument cannot form the basis for a claim of ineffective assistance.

## CONCLUSION

The Court has review the record of the prior proceedings and the Petitioner's motion. It is plain from the record and the motion that the Petitioner is not entitled to any relief. As a result, the Court must dismiss the action.

The Court further finds that the Petitioner has not made a substantial showing of a denial of a constitutional right. 28 U.S.C. § 2253(c)(2); <u>Miller -El v. Cockrell</u>, 537 U.S. 322, 336-38, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims

debatable or wrong) (citations omitted).  As a result, the Court declines to issue a certificate of appealability. Rule 11(a), <u>Rules Governing Section 2255 Proceedings for the United States District Courts</u>.

**ORDER**

**IT IS, THEREFORE, ORDERED** that the Petitioner's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody [Doc. 1] is hereby **DENIED** and this action is hereby **DISMISSED** in its entirety.

**IT IS FURTHER ORDERED** that this Court declines to issue a certificate of appealability.

Signed: September 8, 2010

Martin Reidinger
United States District Judge